FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

APR 1 6 2007

JAMES N. HATTEN, Clerk
By: *JkPinckney*
Deputy Clerk

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

ADVANTAGE INVESTORS,
Derivatively on Behalf of BEAZER
HOMES USA, INC.,

    Plaintiff,

vs.

IAN J. MCCARTHY, MICHAEL T.
RAND, LAURENT ALPERT, BRIAN
C. BEAZER, LARRY T. SOLARI,
KATIE J. BAYNE, STEPHEN P.
ZELNAK, JR., PETER G.
LEEMPUTTE, JAMES O'LEARY,
KENNETH J. GARY and MAUREEN
E. O'CONNELL,

    Defendants,

    -and-

BEAZER HOMES USA, INC.,
a Delaware corporation,

    Nominal Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Case No. 1 07 CV 08 42

(Derivative Action)

**JURY DEMAND**

---

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR
BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, WASTE OF
CORPORATE ASSETS, UNJUST ENRICHMENT AND VIOLATIONS OF
THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by its attorneys, submits this Verified Shareholder Derivative Complaint (the "Complaint") against the defendants named herein.

**NATURE OF THE ACTION**

1. This is a shareholder derivative action brought by a shareholder of Beazer Homes USA, Inc. ("Beazer" or the "Company") on behalf of the Company against certain of its officers and directors seeking to remedy defendants' violations of state and federal law, including violations of the Securities and Exchange Act of 1934 ("Exchange Act"), breaches of fiduciary duties, abuse of control, waste of corporate

assets and unjust enrichment that occurred between July 2006 and the present (the "Relevant Period") and that have caused substantial losses to Beazer and other damages, such as to its reputation and goodwill. The allegations in this Complaint are based upon information and belief from plaintiff's own investigation including, a thorough review of filings with the Securities and Exchange Commission ("SEC"), press releases, and news articles.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(a)(2) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interests and costs.

3.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that plaintiff's claims arise in part under the Constitution and laws of the United States, including the Exchange Act. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

4.      This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with Georgia so as to render the exercise of jurisdiction by this District permissible under traditional notions of fair play and substantial justice.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because one or more of the defendants either resides in or maintains executive offices in this District, a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein and aiding and abetting and conspiracy in violation of fiduciary duties owed to Beazer occurred in this District, and defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## SUMMARY OF THE ACTION

6.      Beazer is one of the country's ten largest single-family home builders, designing, selling, and building homes in various locations within the United States. The Company offers economy homes primarily to entry-level buyers, value homes to entry-level and move-up buyers, and style homes to move-up buyers, as well as homes to buyers over 55 years of age. The Company also provides mortgage origination and title insurance services to its homebuyers.

7.      Throughout the Relevant Period, uninhibited by internal control restraints, defendants caused the Company to engage in reckless tactics, selling mortgages to unqualified buyers. The Company's lending practices eventually led to a vast amount of foreclosures and other problems, materially impacting the Company's stability. Defendants' mismanagement of the Company led to investigations into the Company's lending practices by the Internal Revenue Service ("IRS"), the Justice Department, and the Department of Housing and Urban Development. Furthermore, according to Michael Rehaut, and analyst at JP Morgan Chase, the Federal Bureau of Investigation ("FBI") is investigating the Company's corporate and investment policies.

8.      Rather than change their lending practices and correct the known deficiencies plaguing the Company's mortgage origination business, during the Relevant Period, defendants caused or allowed the Company to issue press releases and SEC filings that improperly portrayed the Company's business and prospects. As a result of these improper statements, Beazer stock traded at artificially inflated prices during the Relevant Period, reaching a high of $48 per share in December 2006. Defendants then profited from this inflation by improperly disposing of over $10 million of their personally held stock.

9.      The defendants also caused the Company to "buyback" $22.1 million in stock during the Relevant Period under the Company's share repurchase program. These stock repurchases were supposed to help return cash to the Company's

stockholders and manage dilution resulting from shares issued under Beazer's employee stock plans. Because the price of Beazer shares was artificially inflated throughout the Relevant Period by way of defendants' concealments and misrepresentations, however, the Company materially overpaid for its own stock and to its detriment. The defendants, therefore, caused the Company to expend $22.1 million in the stock "buyback" throughout the same time period as that of certain defendants' participation in the illegal inside selling of the Company's stock for proceeds of over $10 million.

10.     On February 14, 2007, the Company terminated the employment of defendant Kenneth J. Gary ("Gary"), Executive Vice President and General Counsel for "a pattern of personal conduct which includes violations of company policies."

11.     On March 18, 2007, *The Charlotte Observer* reported that Beazer had violated federal lending rules and federal housing officials were reviewing whether Beazer complied with federal lending regulations in arranging government-insured loans for buyers in its subdivisions.

12.     On March 21, 2007, the defendants caused or allowed the Company to announce the resignation of James O'Leary ("O'Leary"), the Company's Chief Financial Officer ("CFO") and Executive Vice President.

13.     Then, on March 27, 2007, the defendants caused or allowed the Company to issue a press release titled "Beazer Homes Responds to Media Reports." The press release stated in part:

> In response to media reports and inquiries into the possibility of a federal investigation of the Company in connection with alleged mortgage fraud, Beazer Homes USA, Inc. has the following response.
>
> At this time, Beazer Homes can not comment on or verify any investigation. However, we will fully cooperate with any investigation by any government agency.

14.     On March 28, 2007, Beazer's value collapsed $2.64 per share to close at $28.77 per share, a one-day decline of 9%. To date, Beazer's market capitalization has been damaged by over $470 million.

15.     Defendants knew and consciously disregarded, were reckless or grossly negligent in not knowing or should have known but improperly concealed the true facts. Those facts were as follows:

(a)     defendants caused the Company to engage in reckless lending practices before and during the Relevant Period that coupled with the Company's lack of internal controls over its lending procedures, would lead to numerous foreclosures and other problems;

(b)     the Company's business growth was primarily attributed to its reckless lending practices to low-income borrowers with poor credit histories;

(c)     many of the Company's buyers would not be able to pay their loans after the first two years because they lacked sufficient income or credit, which would lead to decreased sales and earnings and numerous foreclosures; and

(d)     given the increased volatility in the mortgage lending market, the Company had no reasonable basis to make optimistic projections about its 2007 results.

## THE PARTIES

16.     Plaintiff Advantage Investors is, and was at times relevant hereto, an owner and holder of Beazer common stock. Advantage Investors is a citizen of Texas.

17.     Nominal defendant Beazer is a corporation organized and existing under the laws of the state of Delaware with its headquarters located at 1000 Abernathy Road, Suite 1200, Atlanta, Georgia 30328. Beazer, through its subsidiaries, engages in the design, building, and sale of single-family homes in the United States. The Company also provides mortgage origination and title insurance services to its homebuyers.

18.     Defendant Ian J. McCarthy ("McCarthy") is, and at all relevant times was, a director, President and Chief Executive Officer ("CEO") of Beazer. Because of McCarthy's positions, he knew the adverse non-public information about the business of Beazer. Specifically, he knew, consciously disregarded, was reckless and grossly

negligent in not knowing or should have known about the business of Beazer, as well as its projections, discussions, and disclosure of the Company's, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors' (the "Board") meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, McCarthy participated in the issuance of improper statements, including the preparation of the false and/or misleading press releases and SEC filings. In 2006, Beazer paid defendant McCarthy $1,200,000 in salary, $7,133,653 in bonus, $12,479,980 in restricted stock awards, $792,808 in other compensation and 427,676 options. During the Relevant Period, while in possession of adverse non-public information regarding Beazer's reckless lending practices and lack of internal controls, McCarthy sold 186,337 of his personally held shares for $8,010,298.11. McCarthy is a citizen of Georgia.

19.    Defendant Michael T. Rand ("Rand") is, and at all relevant times was, Senior Vice President and Chief Accounting Officer of Beazer. Because of Rand's positions, he knew the adverse non-public information about the business of Beazer. Specifically, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known about the business of Beazer, as well as its projections, discussions, and disclosure of the Company's, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the Relevant Period, Rand participated in the issuance of improper statements, including the preparation of the false and/or misleading press releases and SEC filings. In 2006, Beazer paid defendant Rand $280,500 in salary, $389,955 in bonus, $59,415 in restricted stock awards, $54,258 in other compensation and 1,197 options. Rand is a citizen of Georgia.

20.     Defendant Laurent Alpert ("Alpert") is, and at all relevant times was, a director of Beazer. Because of Alpert's positions, he knew the adverse non-public information about the business of Beazer. Specifically, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known about the business of Beazer, as well as its projections, discussions, and disclosure of the Company's, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Alpert participated in the issuance of improper statements, including the preparation of the false and/or misleading press releases and SEC filings. During the Relevant Period, while in possession of adverse non-public information regarding Beazer's reckless lending practices and lack of internal controls, Alpert sold 16,000 of his personally held shares for $691,040. Alpert is a citizen of New York.

21.     Defendant Brian C. Beazer ("B. Beazer") is, and at all relevant times was, a director, and non-executive Chairman of Beazer. Because of B. Beazer's positions, he knew the adverse non-public information about the business of Beazer. Specifically, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known about the business of Beazer, as well as its projections, discussions, and disclosure of the Company's, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, B. Beazer participated in the issuance of improper statements, including the preparation of the false and/or misleading press releases and SEC filings. B. Beazer is a citizen of New York.

22.     Defendant Larry T. Solari ("Solari") is, and at all relevant times was, a director of Beazer.  Because of Solari's positions, he knew the adverse non-public information about the business of Beazer.  Specifically, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known about the business of Beazer, as well as its projections, discussions, and disclosure of the Company's, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Solari participated in the issuance of improper statements, including the preparation of the false and/or misleading press releases and SEC filings.  Solari is a citizen of California.

23.     Defendant Katie J. Bayne ("Bayne") is, and at all relevant times was, a director of Beazer.  Because of Bayne's positions, she knew the adverse non-public information about the business of Beazer.  Specifically, she knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known about the business of Beazer, as well as its projections, discussions, and disclosure of the Company's, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to her in connection therewith.  During the Relevant Period, Bayne participated in the issuance of improper statements, including the preparation of the false and/or misleading press releases and SEC filings.  Bayne is a citizen of Georgia.

24.     Defendant Stephen P. Zelnak, Jr. ("Zelnak") is, and at all relevant times was, a director of Beazer.  Because of Zelnak's positions, he knew the adverse non-public information about the business of Beazer.  Specifically, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known

about the business of Beazer, as well as its projections, discussions, and disclosure of the Company's, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Zelnak participated in the issuance of improper statements, including the preparation of the false and/or misleading press releases and SEC filings.   Zelnak is a citizen of North Carolina.

25.   Defendant Peter G. Leemputte ("Leemputte") is, and at all relevant times was, a director of Beazer.   Because of Leemputte's positions, he knew the adverse non-public information about the business of Beazer.   Specifically, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known about the business of Beazer, as well as its projections, discussions, and disclosure of the Company's, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.   During the Relevant Period, Leemputte participated in the issuance of improper statements, including the preparation of the false and/or misleading press releases and SEC filings.   Leemputte is a citizen of Illinois.

26.   Defendant O'Leary was Executive Vice President and CFO of Beazer at all times relevant hereto, until March 23, 2007.   O'Leary will remain with the Company on an advisory basis until May 1, 2007.   Because of O'Leary's positions, he knew the adverse non-public information about the business of Beazer.   Specifically, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known about the business of Beazer, as well as its projections, discussions, and disclosure of the Company's, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and

connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the Relevant Period, O'Leary participated in the issuance of improper statements, including the preparation of the false and/or misleading press releases and SEC filings. In 2006, Beazer paid defendant O'Leary $560,000 in salary, $1,707,930 in bonus, $3,957,303 in restricted stock awards, $204,870 in other compensation and 134,559 options. During the Relevant Period, while in possession of adverse non-public information regarding Beazer's reckless lending practices and lack of internal controls, O'Leary sold 50,943 of his personally held shares for $2,025,479.46. O'Leary is a citizen of Georgia.

27.     Defendant Gary was Executive Vice President and General Counsel of Beazer until his termination from the Company on February 12, 2007. Because of Gary's positions, he knew the adverse non-public information about the business of Beazer. Specifically, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known about the business of Beazer, as well as its projections, discussions, and disclosure of the Company's, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the Relevant Period, Gary participated in the issuance of improper statements, including the preparation of the false and/or misleading press releases and SEC filings. In 2006, Beazer paid defendant Gary $390,000 in salary, $390,047 in bonus, $1,138,814 in restricted stock awards, $39,548 in other compensation and 37,447 options. Gary is a citizen of Georgia.

28.     Defendant Maureen E. O'Connell ("O'Connell") was a director of Beazer at all times relevant hereto, until February 5, 2007. Because of O'Connell's positions, she knew the adverse non-public information about the business of Beazer. Specifically, she knew, consciously disregarded, was reckless and grossly negligent in

not knowing or should have known about the business of Beazer, as well as its projections, discussions, and disclosure of the Company's, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, O'Connell participated in the issuance of improper statements, including the preparation of the false and/or misleading press releases and SEC filings.  O'Connell is a citizen of Connecticut.

29.    The defendants identified in ¶¶18, 20-25, 28 are referred to herein as the "Director Defendants."  The defendants identified in ¶¶18-19, 26-27 are referred to herein as the "Officer Defendants."  The defendants identified in ¶¶18, 20, 26 are referred to herein as the "Insider Selling Defendants."  Collectively, the Director Defendants, the Officer Defendants and the Insider Selling Defendants are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

30.    By reason of their positions as officers, directors and/or fiduciaries of Beazer and because of their ability to control the business and corporate affairs of Beazer, the Individual Defendants owed Beazer and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Beazer in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Beazer and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

31.    Each director and officer of the Company owes to Beazer and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  In addition, as officers

- 11 -

and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

32.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Beazer, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their advisory, executive, managerial and directorial positions with Beazer, each of the Individual Defendants had access to adverse non-public information about the financial condition, operations, and improper representations of Beazer.

33.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Beazer, and was at all times acting within the course and scope of such agency.

34.     To discharge their duties, the officers and directors of Beazer were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Beazer were required to, among other things:

(a)     refrain from acting upon material inside corporate information to benefit themselves;

(b)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(c)     conduct the affairs of the Company in an efficient, business like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)     remain informed as to how Beazer conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

(f)     ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

35.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Beazer, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.  The conduct of the Individual Defendants who were also officers and/or directors of the Company during the Relevant Period has been ratified by the remaining Individual Defendants who collectively comprised all of Beazer's Board during the Relevant Period.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

36.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

37.     During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: (i) conceal the fact that the Company was improperly misrepresenting its financial results, in order to allow defendants to artificially inflate the price of the Company's shares; (ii) maintain the Individual Defendants' executive and directorial positions at Beazer and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions; and  (iii) deceive the investing public, including shareholders of Beazer, regarding the Individual Defendants' management of Beazer's operations, the Company's financial health and stability, and future business prospects, specifically related to the Company's financials that had been misrepresented by defendants throughout the Relevant Period.  In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

38.     The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least July 2006 and continuing thereafter.  During this time, the Individual Defendants caused the Company to conceal the true fact that Beazer was misrepresenting its financial results.  In addition, defendants also made other specific, improper statements about Beazer's financial performance and future business prospects, as alleged herein.

39.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to

disguise the Individual Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects; and to artificially inflate the price of Beazer common stock so they could: (i) dispose of over $10 million of their personally held stock; and (ii) protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof.

40.    The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently misrepresent its financial results.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

41.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

### BACKGROUND

42.    Beazer engages in the design, building, and sale of single-family homes in the United States.  It offers economy homes primarily to entry-level buyers, value homes to entry-level and move-up buyers, and style homes to move-up buyers, as well as homes to buyers over 55 years of age.  The Company also provides mortgage origination and title insurance services to its homebuyers.  Beazer sells its homes through commissioned employees and independent brokers.  The Company offers

homes at various price points to appeal to homebuyers across various demographic segments.

43.    Throughout the Relevant Period, uninhibited by adequate internal control restraints, the Individual Defendants caused or allowd the Company to engage in reckless tactics, selling mortgages to unqualified buyers. The Company's lending practices eventually led to a vast amount of foreclosures and other problems, materially impacting the Company's stability. The Individual Defendants' mismanagement of the Company led to investigations into the Company's lending practices by the IRS, the Justice Department, and the Department of Housing and Urban Development. Currently, the FBI is investigating the Company's corporate and investment policies.

44.    Furthermore, during the Relevant Period, defendants issued improper statements regarding the Company's business and prospects. As a result of these improper statements, Beazer stock traded at artificially inflated prices during the Relevant Period, reaching a high of $48 per share in December 2006. The Individual Defendants then profited from this inflation by improperly disposing of over $10 million of their personally held stock.

## IMPROPER STATEMENTS

45.    The Individual Defendants by their fiduciary duties of care, good faith and loyalty owed to Beazer a duty to insure that the Company's public statements and financial reporting fairly presented, in all material respects, the operations, business prospects, and financial condition of the Company. In order to adequately carry out these duties, it is necessary for the Individual Defendants to know and understand the material, non-public information to be either disclosed or omitted from the Company's public statements.

46.    On January 19, 2006, the Individual Defendants caused or allowed the Company to issue a press release titled "Beazer Homes Reports First Quarter 2006

EPS of $2.00, up 27%; Company Expects Diluted EPS to Meet or Exceed $10.50 for Fiscal Year 2006." The press release stated in part:

> Beazer Homes USA, Inc. today announced results for the quarter ended December 31, 2005, reporting a record for quarterly earnings per share. Highlights of the quarter, compared to the same period of the prior year, are as follows:
>
> Quarter Ended December 31, 2005
>
> – Net income of $89.9 million, or $2.00 per diluted share (up 29.0% and 27.4%, respectively)
>
> – Home closings: 3,829 (up 7.1%)
>
> – Total revenues: $1.11 billion (up 21.3%)
>
> – Operating income margin: 12.6% (up 40 basis points)
>
> – New orders: 3,872 homes (up 9.2%), sales value $1.13 billion (up 11.3%)
>
> – Backlog at 12/31/05: 9,276 homes (up 10.1%), sales value $2.78 billion (up 18.3%)
>
> Record December Quarter
>
> "We are pleased to announce record results for our first quarter of fiscal 2006," said President and Chief Executive Officer, Ian J. McCarthy. "We generated quarterly revenues of $1.11 billion on home closings of 3,829, up 21% and 7% from the first quarter of fiscal 2005, respectively, and both representing first quarter company records. Furthermore, net earnings and earnings per diluted share in the December quarter increased 29% and 27%, respectively, also representing first quarter records."
>
> * * *
>
> Execution of Share Repurchase Program
>
> As previously announced in November 2005, the Board of Directors, as part of the further development of the company's Profitable Growth Strategy to enhance shareholder value in the context of the current market environment, authorized the expansion of the company's existing share repurchase program to a total of 10 million shares. During the first quarter of fiscal 2006, the company repurchased 1,014,600 shares of its common stock for approximately $67.0 million or $66 per share, while maintaining a debt to capitalization ratio of 47%, within its target range. In addition, the company has entered into a plan under Rule 10b5-1 as part of the share repurchase program. Subject to market conditions and other factors, the company expects to make share repurchases of $200 - $250 million in fiscal 2006. At December 31,

- 17 -

2005, there were approximately 8 million shares remaining under the current authorization.

Fiscal 2006 EPS Outlook

> "*Our current level of backlog, coupled with expectations for further competitive advantages for large public builders such as Beazer Homes, provides us with confidence in our future growth opportunities*," said McCarthy. "In addition, we expect continued execution of our Profitable Growth Strategy in the near term will result in continued growth and meaningfully enhanced shareholder value. As such, we expect fiscal 2006 diluted earnings per share to meet or exceed $10.50 per share."

47.     On April 27, 2006, the Individual Defendants caused or allowed the Company to issue a press release titled "Beazer Homes Reports Record Second Quarter 2006 EPS of $2.35; Company Repurchases 1.01 Million Shares in Q2 06; Diluted EPS Now Expected to be in the Range of $10.00 – $10.50 for Fiscal Year 2006." The press release stated in part:

> Beazer Homes USA, Inc. today announced results for the quarter ended March 31, 2006, reporting a record for second quarter earnings per share. Highlights of the quarter, compared to the same period of the prior year, are as follows:
>
> Quarter Ended March 31, 2006
>
> –     Net income of $104.4 million, or $2.35 per diluted share, compared to a reported net loss of $84.3 million, or $2.09 per diluted share in the prior year's second quarter, which included a non-cash goodwill impairment charge of $130.2 million. Excluding the goodwill impairment charge, adjusted earnings per diluted share in last year's second quarter was $1.04.
>
> –     Home closings: 4,273 (up 18.6%).
>
> –     Total revenues: $1.27 billion (up 30.0%).
>
> –     Operating income margin: 13.0%, compared to an operating loss margin in the prior year's second quarter of (6.0%), which included the goodwill impairment charge.
>
> –     New orders: 4,224 homes (down 19.4%).

- 18 -

–    Backlog at 3/31/06: 9,227 homes with a sales value of
     $2.79 billion, compared to 10,064 homes with a sales value
     of $2.90 billion at 3/31/05.

–    Repurchased 1.01 million shares for approximately $66.2
     million; year-to-date share repurchases totaled 2.02 million
     for $133.2 million.

Record March Quarter

     "We are pleased to announce record results for our second quarter
of fiscal 2006," said President and Chief Executive Officer, Ian J.
McCarthy. "We generated quarterly revenues of $1.27 billion on home
closings of 4,273, up 30% and 19% from the second quarter of fiscal
2005, respectively, both second quarter company records. Furthermore,
net earnings and earnings per diluted share in the March quarter totaled
$104 million, and $2.35, respectively, both also second quarter records."

     "In a number of markets across the country, we have seen the pace
of sales decline and price appreciation moderate relative to that
experienced over the past several years, as evidenced by the lower net
orders this quarter," McCarthy continued. "*However, we continue to
believe that the long-term industry fundamentals, including increased
demand driven by demographic and employment trends coupled with
further supply constraints in our major markets, remain compelling*.
Our broad geographic and product diversity, coupled with our
commitment to profitable growth and the optimal allocation of capital,
position us well in both the near and long term business environments."

                              * * *

Share Repurchases

     During the second quarter of fiscal 2006, the company
repurchased 1,007,200 shares of its common stock under its 10 million
share repurchase authorization for approximately $66.2 million or $65.73
per share. At the same time, the company maintained a debt to
capitalization ratio of 49%, within its target range. Year to date, the
company has repurchased 2,021,800 shares, for a total of $133.2 million.

Fiscal 2006 EPS Outlook

     McCarthy concluded, "We expect continued execution of our
Profitable Growth Strategy, including our share repurchase program, to
result in continued growth and enhanced shareholder value in the near
and long term. However, the current sales environment in many markets
is more difficult than previously anticipated. In addition, as we optimize
our capital base and exit markets and land positions returning less than
our overall cost of capital, we incur some incremental period costs. As
such, we now have broadened our range for expected fiscal 2006 diluted
earnings per share to $10.00 – $10.50 to explicitly address these factors.
This assumes no further deterioration in new order trends during the
remaining spring and summer months of this year."

48.    On July 27, 2006, the Individual Defendants caused or allowed the Company to issue a press release titled "Beazer Homes Reports Third Quarter 2006 EPS of $2.37; Company Repurchases 1.1 Million Shares in Q3 06; Diluted EPS Now Expected to be in the Range of $9.25 - $9.75 for Fiscal Year 2006." The press release stated in part:

> Beazer Homes USA, Inc. today announced results for the quarter ended June 30, 2006. Highlights of the quarter are as follows:
>
> Quarter Ended June 30, 2006
>
> –    Net income of $102.6 million, or $2.37 per diluted share, compared to net income of $112.7 million, or $2.50 per diluted share in the prior year's third quarter.
>
> –    Home closings: 4,156, compared to 4,631 in the prior year.
>
> –    Total revenues: $1.20 billion, compared to $1.29 billion in the prior year.
>
> –    Operating income margin: 13.0%, compared to 13.8% in the prior year.
>
> –    New orders: 4,378 homes, compared to 5,202 in the prior year.
>
> –    Backlog at 6/30/06: 9,449 homes with a sales value of $2.85 billion, compared to 10,635 homes with a sales value of $3.12 billion at 6/30/05.
>
> –    Repurchased 1.07 million shares for approximately $50.1 million; year-to-date share repurchases totaled 3.09 million for $183.3 million.
>
> "Beazer Homes delivered solid fiscal third quarter financial results in an increasingly difficult housing market," said President and Chief Executive Officer, Ian J. McCarthy. "Across the country, the housing markets that had experienced rapid price appreciation have seen significant increases in cancellation rates and resale home inventories. While it is difficult to predict the duration of these current market trends, our broad geographic and product diversity, coupled with our commitment to profitability and prudent capital allocation, should position us well for the future. *We continue to believe that the long-term industry fundamentals, based on demographic driven demand and employment trends, together with further supply constraints, remain compelling.*"

\* \* \*

During the third quarter of fiscal 2006, the company repurchased 1,069,100 shares of its common stock under its 10 million share repurchase authorization for approximately $50.1 million or $46.88 per share. Year to date, the company has repurchased 3,090,900 shares, for a total of $183.3 million. At June 30, net debt to total capitalization stood at 52%. The company expects its net debt to capitalization ratio to be in its year-end target range of under 50% at September 30 after it completes what is its historically strongest quarter for closings and cash flow generation.

\* \* \*

Fiscal 2006 EPS Outlook

McCarthy concluded, "We expect continued execution of our Profitable Growth Strategy, including our share repurchase program, to result in continued profitability and enhanced shareholder value in the near and long term. Looking ahead, we do not see conditions in the housing markets improving significantly in the remainder of the fiscal year. As such, we have adjusted our expectation for our fiscal 2006 diluted earnings per share to be in a range of $9.25- $9.75. This compares to adjusted earnings per share of $8.72 in fiscal 2005."

49.    On November 7, 2006, the Individual Defendants caused or allowed the Company to issue a press release titled "Beazer Homes Reports Fourth Quarter and FY 2006 Financial Results."  The press release stated in part:

Beazer Homes USA, Inc. today announced results for the quarter and fiscal year ended September 30, 2006. Highlights of both the quarter and fiscal year ended September 30, 2006, compared to the same periods of the prior year, are as follows:

Quarter Ended September 30, 2006

–    Net income of $91.9 million, or $2.19 per diluted share, compared to net income of $164.4 million, or $3.61 per diluted share in the prior year's fourth quarter.

–    Home closings: 6,411 homes, compared to 6,339 in the prior year.

–    Total revenues: $1.88 billion, compared to $1.81 billion in the prior year.

–    Operating income margin: 8.0%, compared to 14.1% in the prior year.

- New orders: 2,064 homes, compared to 4,937 in the prior year.

- Repurchased 557,400 shares for approximately $22.1 million.

Year Ended September 30, 2006

- Net income of $388.8 million, or $8.89 per diluted share, compared to reported net income of $262.5 million, or $5.87 per diluted share, and adjusted net income of $392.8, or $8.72 per diluted share in FY 2005.

- Home closings: 18,669 compared to 18,146 in the prior year.

- Total revenues: $5.46 billion, compared to $5.00 billion in the prior year.

- Operating income margin: 11.2% compared 9.7% on a reported basis and 12.4% on an adjusted basis in FY 2005.

- New orders: 14,538 compared to 18,923 in the prior year.

- Backlog at 9/30/06: 5,102 homes with a sales value of $1.56 billion, compared to 9,233 homes with a sales value $2.72 billion in the prior year.

- Repurchased 3.65 million shares for approximately $205.4 million.

- Year-end net debt-to-capitalization ratio as of 9/30/06: 49.5%

"Beazer Homes had record fourth quarter closings and revenues in fiscal 2006 as we focused on converting our existing backlog in what remains a challenging housing market," said President and Chief Executive Officer, Ian J. McCarthy. "Despite our strong close of fiscal 2006, most markets across the country continue to experience higher levels of resale home inventories, lower levels of demand for new homes, significant increases in cancellation rates and significantly higher discounting. As it is difficult to predict the duration of these factors, we have proactively taken steps to align our overhead structure and capital spending with our expectations for a reduced level of home closings in fiscal 2007. *We believe this disciplined commitment to profitability and prudent capital allocation, coupled with our broad geographic and product diversity, will position us well for the continuing difficult market environment and the eventual upturn*. We continue to believe

that the long-term industry fundamentals, based on demographic driven demand and employment trends, together with further supply constraints, remain compelling."

* * *

Fiscal 2007 Outlook

*The company previously announced that it anticipates home closings in the range of 12,000 - 13,500 in fiscal 2007. It expects new orders in the range of 12,000 - 14,000 for this period.* The attainment of closings and new orders in these ranges assumes the resumption of positive year-over-year sales comparisons at varying levels by the last quarter of the 2007 fiscal year.

*Achievement of the company's fiscal 2007 forecast of 13,500 closings is expected to result in diluted earnings per share of approximately $3.65.* This forecast assumes a stabilization of average gross margins during fiscal 2007 at or near the levels attained in the fiscal 2006 fourth quarter. The company has not provided a diluted earnings per share estimate for the 12,000 unit level of closings as there is insufficient visibility to assess the level of margins, the potential for additional impairments, or further overhead reductions required at this volume level.

The company expects to close approximately 2,500 homes during the quarter ending December 31, 2006. During this quarter, the company also expects to incur approximately $4.0 million of additional severance and related costs associated with the previously referenced overhead alignment.

During this period, the Company is focused on maintaining balance sheet strength, reducing costs, and maximizing its financial resources to better position the company to take advantage of those opportunities that will arise when conditions stabilize. *The steps taken in September and October to align the company's cost structure with the current environment are consistent with the company's goal to be in the top quartile of its peer group with respect to margins and returns.*

## THE TRUTH BEGINS TO EMERGE

50.    On January 25, 2007, the Individual Defendants caused or allowed the Company to revise its first quarter 2007 financial results, stating in part:

Beazer Homes USA, Inc. today announced financial results for the quarter ended December 31, 2006. Summary results of the quarter are as follows:

Quarter Ended December 31, 2006

–    *Reported net loss of $(59.0) million, or $(1.54) per share, including charges related to inventory impairments and abandonment of land option contracts of $119.9 million on a pre-tax basis, compared to net income of $89.9*